**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Eric Tunis, Esq.
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ  07095-0988
Tel:  (732) 549-5600
Fax:  (732) 549-1881
Attorneys for Plaintiff, Fameco Real
Estate, L.P.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FAMECO REAL ESTATE, L.P., <br><br> Plaintiff, <br><br> v. <br><br> TYLER BENNETT, DANIEL SPECTOR, WINICK REALTY GROUP LLC, and WINICK REALTY GROUP LLC NJ <br><br> Defendants. | Civil Action No. 3:12-cv-06102 (JAP)(TJB) <br><br><br> **PLAINTIFF FAMECO REAL ESTATE, L.P.'S FIRST INTERROGATORIES TO DEFENDANTS TYLER BENNETT AND DANIEL SPECTOR** |

**TO:**  Matthew K. Blaine, Esq.
Lomurro, Davison, Eastman and Munoz, P.A.
100 Willow Brook Road
Suite 100
Freehold, NJ 07728

**PLEASE TAKE NOTICE** that pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Civil Rule 33.1, and the December ___, 2012, Order of the Court, plaintiff Fameco Real Estate L.P. ("Fameco") requests that defendants Tyler Bennett ("Bennett") and Daniel Spector ("Spector" and collectively with Bennett as "defendants") answer the within Interrogatories separately and completely, in writing, under oath, by _____,

in accordance with the definitions and instructions contained herein.

**PLEASE TAKE FURTHER NOTICE** that pursuant to New Jersey Local Civil Rule 33.1, if the person who verifies the answers to these Interrogatories does not have personal knowledge of the information contained in the answers, that person shall, for each answer not verified by personal knowledge, identify the person or persons from whom the information was obtained, or, if the source of the information is documentary, provide a full description including the location thereof.

**PLEASE TAKE FURTHER NOTICE** that failure to provide the requested answers to these Interrogatories may subject you to those sanctions provided for in the Federal Rules of Civil Procedure.

**PLEASE TAKE FURTHER NOTICE** that these Interrogatories are deemed continuing so as to require supplemental answers pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

                                **GREENBAUM, ROWE, SMITH & DAVIS LLP**
                                Counsel to Plaintiff Fameco Real Estate, L.P.

                                By:    /s/ Eric Tunis
                                        ERIC TUNIS

Dated: November 9, 2012

## DEFINITIONS

For the purposes of these Interrogatories, the following definitions shall apply:

1. "**You**," "**Your**," or "**defendants**" shall mean defendants Tyler Bennett and Daniel Spector collectively as well as individually, and their respective affiliates, agents, employees, representatives, and/or all other persons acting on their behalf.

2. "**Bennett**" shall mean defendant Tyler Bennett and his affiliates, agents, employees, representatives, and/or all other persons acting on his behalf.

3. "**Spector**" shall mean defendant Daniel Spector and his affiliates, agents, employees, representatives, and/or all other persons acting on his behalf.

4. "**Fameco**" shall mean plaintiff Fameco Real Estate, L.P. and its affiliates, agents, employees, representatives, and/or all other persons acting on its behalf.

5. "**Winick**" shall mean Winick Realty Group LLC and its affiliates, agents, employees, representatives, and/or all other persons acting on its behalf.

6. "**Winick NJ**" shall mean winick Realty Group LLC NJ and its affiliates, agents, employees, representatives, and/or all other persons acting on its behalf.

7. **"Complaint"** shall mean the complaint filed by Plaintiff in the United States District Court, District of New Jersey on or about September 27, 2012 in the case of <u>Fameco Real Estate, L.P. v. Tyler Bennett and Daniel Spector</u>, Civil Action No. 3:12-cv-06102 (JAP)(TJB).

8. **"Amended Complaint"** shall mean the amended complaint filed by Plaintiff in the United States District Court, District of New Jersey on or about November 7, 2012 in the case of <u>Fameco Real Estate, L.P. v. Tyler Bennett and Daniel Spector</u>, Civil Action No. 3:12-cv-06102 (JAP)(TJB).

9. The terms "**regarding**," "**concerning**," "**referring to**," or "**relating to**" shall be construed in their broadest sense to require production of documents that directly or indirectly pertain to, embody, mention, reflect, describe, constitute, refer to or evidence the subject of the request.

10. The term **"Communication"** means any transmission of information, however produced or reproduced, whether by "document" as herein defined, or orally, and includes, but is not limited to, correspondence, e-mails, voicemails, internal or external memos, oral statements, telephone conversations, negotiations, conferences, or meetings, however formal or informal.

11. The term **"Person"** means all individuals and entities including, but not limited to, natural persons, sole

4

proprietorships, firms, associations, companies, partnerships, joint ventures, corporations, trusts and estates, legal or investment advisors.

    12. The term **"Electronically Stored Information"** shall mean information currently maintained in computer files as well as historical, archival, back-up, and legacy computer files, whether in current or historic media or formats.

    13. The terms "**Identify**," "**Identity**," or "**Identification**" mean, when used in reference to:

    I.    a natural person, his or her:

        a.    full name;

        b.    home address;

        c.    business address;

        d.    present or last known position, business affiliation, and job description;

    II.    a company, corporation, association, partnership, or any legal entity other than a natural person:

        a.    its full name;

        b.    a description of the type of organization or entity;

        c.    the address of its principal place of business;

        d.    the jurisdiction of its incorporation or organization; and

  e. the date of its incorporation or organization;

III. a document:

  a. its description (e.g., letter, memorandum, report, etc.)

  b. its title;

  c. its date;

  d. the number of pages thereof;

  e. its subject matter;

  f. the identity of each author, signer, and any person who participated in its preparation;

  g. the identity of its addressee or recipient;

  h. the identity of each person to whom copies were sent and each person by whom copies were received;

  i. its present location; and

  j. the identity of its custodian. If any such document is no longer in the possession of or subject to the control of plaintiffs, state what disposition was made of it and the date of disposition.

IV. an oral communication:

  a. the date and time it occurred;

  b. the place where it occurred;

    c. the complete substance of the communication;

    d. the identity of each person

      (1) to whom such communication was made;

      (2) by whom such communication was made;

      (3) who was present when such communication was made; and

    e. the identity of all notes, minutes, memoranda or other documents memorializing or referring to the subject matter of the statement.

14. The terms **"Document"** or **"Documents"** refer to tangible evidence of any type, including the original and all copies, prior drafts and translations of information in any written, typed, printed, recorded or graphic form, however produced or reproduced, regardless of origin or location, that can be located, discovered or obtained by reasonably diligent efforts, including, without limitation, all letters, memoranda, notes, written communications, notes concerning or memorializations of oral statements, communications, conversations, telephone calls or meetings, records, reports, affidavits, statements, charts, tabulations, surveys, studies, schedules, lists, analyses, graphs, notebooks, diaries, calendars, minutes, logs, journal entries, vouchers, orders, checks or canceled checks (front and back), bills, expense accounts, ledgers, books of account,

financial statements, shipping documents, receipts, acknowledgments, personal records, statistics, telegrams, teletypes, telexes, telecopies, printouts, files, inter-office and intra-office communications, contracts, agreements, assignments, licenses, instructions, directives, investigative reports, summaries, prospectuses, certificates, drawings, plans, questionnaires, pamphlets, books, booklets, bulletins, newspapers, magazines, presentations, slides, tape recordings, voice recordings, wire recordings, phonograph records, photographs, photographic negatives, video or video recordings, films, motion pictures, microfiche, microfilm, computer disks, computer tapes, CD-ROMs, electronic mail, and any form of computer or network data storage from which information can be obtained or translated.

**INSTRUCTIONS**

1. Pursuant to Fed. R. Civ. P. 33, in answering these Interrogatories, Bennett and Spector are required to furnish under oath all information that is in their possession, available to them, or able to be discovered or obtained by reasonably diligent efforts, including information in the possession of their agents or representatives, as herein defined.

2. The fact that investigation is continuing or that discovery is not complete shall not excuse failure to answer each interrogatory as fully as possible. Unless otherwise expressly notified in writing, the failure to produce any items requested hereinafter shall be deemed a representation that such document does not exist or is not in the possession, custody or control of Bennett or Specotr or their agents at the time of the filing and service of the response to the interrogatories.

3. If a refusal to answer an interrogatory is based on the ground that the request is unduly burdensome, identify the number and nature of documents needed to be searched, the location of the documents, and the hours, number of persons, and costs required to conduct the search.

4. The singular shall be deemed to include the plural, and vice versa, as necessary to bring within the scope of the discovery request all responses that might otherwise be

9

construed to be outside its scope. The feminine shall be deemed to include the masculine, and vice versa, as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope. The word "and" shall be deemed to include the disjunctive "or," and vice versa, as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope. The past tense shall be construed to include the present tense, and vice versa, as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

5. When an Interrogatory includes a request to identify or produce a document or documents, such request shall be deemed to call for the identification or production of the original document or documents as well as all copies and preliminary drafts of documents which differ in any respect from the original or final draft or from each other by reason of, inter alia, handwritten or other notes or comments having been added to one copy of the document but not to the original or other copies thereof.

6. When an Interrogatory includes a request to identify or produce a document or documents, such request requires the production of the document in its entirety, without redaction or expurgation.

10

7. Each document produced in response to these Interrogatories shall be identified by the particular Interrogatory or Interrogatories to which it responds.

8. If any Interrogatory cannot be answered in full, it should be answered to the fullest extent possible, and accompanied by (a) an explanation as to the nature of the information or knowledge that cannot be furnished, and (b) an explanation as to why the remainder of the Interrogatory cannot be answered.

9. If any document covered by an Interrogatory request for the identification or production of a document is withheld from production, please furnish a list identifying each such document, and providing the following information with respect to each such document:

    a. the reason for withholding the document;

    b. a statement of the basis for the claim of privilege, work product or other ground for non-disclosure;

    c. a brief description of the document, including:

        (1) the date of the document;

        (2) the number of pages, attachments and appendices;

        (3) the names of its authors and an identification of each such person;

11

    (4)    the name of each person who was sent, shown or copied on the document, or has access to or custody of the document, together with an identification of each such person;

    (5)    the present custodians;

    (6)    the subject matter of the document, and, in the case of any document relating or referring to a meeting or conversation, an identification of such conversation;

    (7)    the type of document, e.g., letter, memorandum, etc.; and

    (8)    the Interrogatory or Interrogatories to which the document is responsive.

10.    If an Interrogatory calls for production of a document that is not currently available, include a statement to that effect and furnish whatever documents are available. Include in your statement when such documents were most recently in your possession, custody or control and what disposition was made of them.

11.    If an Interrogatory calls for production of a document that was at one time in existence, but has been lost, discarded or destroyed, identify each document and provide the following information with regard to each such document:

      a.   the date or approximate date it was lost, discarded or destroyed;

      b.   the circumstances and manner in which it was lost, discarded or destroyed;

      c.   the reason or reasons for disposing of the document (if discarded or destroyed);

      d.   the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document; and

      e.   the identity of all persons who have knowledge of the contents thereof.

12. If the information requested is not known or reasonably available in the precise form and scope requested, or for the particular date or period specified, but can be supplied partially, in a modified form or for a different but relevant date or period, set forth the best information available together with a statement of the reasons that the answer is not completely responsive to the interrogatory together with the identity of any documents or sources from which more complete information is obtainable.

13. Whenever an Interrogatory calls for information with respect to "each" or "every" one of a particular type of occurrence, communication or other matter of which more than one exists, identify separately, and in chronological order, each

13

instance of the occurrences, communications or other matters referred to, and provide for each such instance all of the information called for immediately following such identification.

14. In responding to each Interrogatory, identify the person(s) consulted in preparing the particular response, and, if different, the person(s) most familiar with the facts concerned.

15. Any Electronically Stored Information provided pursuant to Fed. R. Civ. P. 33(d) shall be produced in native format.

16. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Interrogatories are deemed continuing in nature, and Capitol is hereby requested and required to supplement its responses up to and through the time of trial.

## INTERROGATORIES

1. Identify any and all of Fameco's proprietary information, including but not limited to information relating to clients, listing agreements, listing expirations, trade secrets, proprietary market information databases, corporate strategies, and real estate development activities that have been retained by Bennett and/or Spector since terminating their affiliation with Fameco.

2. Set forth in detail the circumstances surrounding Bennett and/or Spector's disclosure and use of Fameco's proprietary information, including but not limited to information relating to clients, listing agreements, listing expirations, trade secrets, proprietary market information databases, corporate strategies, and real estate development activities since April 1, 2012. Attach any documents relating to Bennett and Spector's use of Fameco's proprietary material hereto.

3. Identify all communications, written or otherwise, and/or documents exchanged between Bennett and/or Spector and any "Covered Client," as that term is defined in Bennett and Spector's respective Broker-Salesperson Contracts with Fameco, including, since Bennett and/or Spector terminated their relationship with Fameco. Attach copies of any communications and notes, memoranda and e-mails related to the same.

4. Identify all contracts, agreements, or understandings entered into between Bennett and/or Spector and any "Covered Client," as that term is defined in Bennett and Spector's respective Broker-Salesperson Contracts with Fameco, including, but not limited to, all documents evidencing each such contract, agreement, or understanding, or the termination thereof, since April 1, 2012. Attach any documents relating to same hereto.

5. Identify any meetings, conversations, telephone discussions or other communications between Bennett and/or Spector and any "Covered Client," as that term is defined in Bennett and Spector's respective Broker-Salesperson Contracts with Fameco, or their representatives, since Bennett and/or Spector terminated their relationships with Fameco. Attach copies of any notes, memoranda or e-mails related to the same.

6. Identify and set forth in detail any "Brokerage Services" provided by Bennett to any "Covered Clients," as those terms are defined in Bennett's Broker-Salesperson Contract with Fameco, in connection with transactions involving real property located in Pennsylvania, Delaware or New Jersey and less than 101 miles from any point within Middlesex County, NJ since terminating his affiliation with Fameco. Attach any documents relating to same hereto.

7.  Identify and set forth in detail any "Brokerage Services" provided by Spector to any "Covered Clients," as those terms are defined in Spector's Broker-Salesperson Contract with Fameco, in connection with transactions involving real property located in Pennsylvania, Delaware or New Jersey and less than 101 miles from any point within Philadelphia County, PA since terminating his affiliation with Fameco.  Attach any documents relating to same hereto.

8.  Set forth in detail the circumstances surrounding, including but not limited to the current status of, any and all deals listed on Bennett and Spector's respective Termination Deal Sheets.  Attach any documents relating to same hereto.