**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Eric Tunis, Esq.
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ  07095-0988
Tel:  (732) 549-5600
Fax:  (732) 549-1881
Attorneys for Plaintiff, Fameco Real
Estate, L.P.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FAMECO REAL ESTATE, L.P.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TYLER BENNETT, DANIEL SPECTOR,<br>WINCIK REALTY GROUP LLC, and<br>WINICK REALTY GROUP LLC NJ<br><br>　　　　　Defendants. | Civil Action No.  3:12-cv-06102 (JAP)(TJB)<br><br><br>**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANTS TYLER BENNETT AND DANIEL SPECTOR** |

**TO:**　Matthew K. Blaine, Esq.
　　　Lomurro, Davison, Eastman and Munoz, P.A.
　　　100 Willow Brook Road
　　　Suite 100
　　　Freehold, NJ 07728

**PLEASE TAKE NOTICE** that pursuant to Rule 36 of the Federal Rules of Civil Procedure, Local Civil Rule 36.1, and the December ___, 2012, Order of the Court, plaintiff Fameco Real Estate L.P. ("Fameco") demands that defendants Tyler Bennett ("Bennett") and Daniel Spector ("Spector" and collectively with Bennett as "defendants") respond to the following Requests for Admission.

**PLEASE TAKE FURTHER NOTICE** that those statements which are not admitted or denied by defendants shall be deemed admitted. Under the applicable rules, if a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and if good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

                                          **GREENBAUM, ROWE, SMITH & DAVIS LLP**
                                          Counsel to Plaintiff Fameco Real
                                          Estate, L.P.

                                          By: \_\_\_\_/s/ Eric Tunis_____
                                                   ERIC TUNIS

Dated: November 9, 2012

## DEFINITIONS

For the purposes of these Document Requests, the following definitions shall apply:

1. **"You," "Your,"** or **"defendants"** shall mean defendants Tyler Bennett and Daniel Spector collectively as well as individually, and their respective affiliates, agents, employees, representatives, and/or all other persons acting on their behalf.

2. **"Bennett"** shall mean defendant Tyler Bennett and his affiliates, agents, employees, representatives, and/or all other persons acting on his behalf.

3. **"Spector"** shall mean defendant Daniel Spector and his affiliates, agents, employees, representatives, and/or all other persons acting on his behalf.

4. **"Fameco"** shall mean plaintiff Fameco Real Estate, L.P. and its affiliates, agents, employees, representatives, and/or all other persons acting on its behalf.

5. **"Winick"** shall mean Winick Realty Group LLC and its affiliates, agents, employees, representatives, and/or all other persons acting on its behalf.

6. **"Winick NJ"** shall mean winick Realty Group LLC NJ and its affiliates, agents, employees, representatives, and/or all other persons acting on its behalf.

7. "**Complaint**" shall mean the complaint filed by Plaintiff in the United States District Court, District of New Jersey on or about September 27, 2012 in the case of <u>Fameco Real Estate, L.P. v. Tyler Bennett and Daniel Spector</u>, Civil Action No. 3:12-cv-06102 (JAP)(TJB).

8. "**Amended Complaint**" shall mean the amended complaint filed by Plaintiff in the United States District Court, District of New Jersey on or about November 7, 2012 in the case of <u>Fameco Real Estate, L.P. v. Tyler Bennett and Daniel Spector</u>, Civil Action No. 3:12-cv-06102 (JAP)(TJB).

9. The terms "**regarding**," "**concerning**," "**referring to**," or "**relating to**" shall be construed in their broadest sense to require production of documents that directly or indirectly pertain to, embody, mention, reflect, describe, constitute, refer to or evidence the subject of the request.

10. The term "**Communication**" means any transmission of information, however produced or reproduced, whether by "document" as herein defined, or orally, and includes, but is not limited to, correspondence, e-mails, voicemails, internal or external memos, oral statements, telephone conversations, negotiations, conferences, or meetings, however formal or informal.

11. The term "**Person**" means all individuals and entities including, but not limited to, natural persons, sole

4

proprietorships, firms, associations, companies, partnerships, joint ventures, corporations, trusts and estates, legal or investment advisors.

12. The term **"Electronically Stored Information"** shall mean information currently maintained in computer files as well as historical, archival, back-up, and legacy computer files, whether in current or historic media or formats.

13. The terms **"Identify," "Identity,"** or **"Identification"** mean, when used in reference to:

    I.    a natural person, his or her:

        a.    full name;

        b.    home address;

        c.    business address;

        d.    present or last known position, business affiliation, and job description;

    II.    a company, corporation, association, partnership, or any legal entity other than a natural person:

        a.    its full name;

        b.    a description of the type of organization or entity;

        c.    the address of its principal place of business;

        d.    the jurisdiction of its incorporation or organization; and

      e.    the date of its incorporation or organization;

III. a document:

      a.    its description (e.g., letter, memorandum, report, etc.)

      b.    its title;

      c.    its date;

      d.    the number of pages thereof;

      e.    its subject matter;

      f.    the identity of each author, signer, and any person who participated in its preparation;

      g.    the identity of its addressee or recipient;

      h.    the identity of each person to whom copies were sent and each person by whom copies were received;

      i.    its present location; and

      j.    the identity of its custodian. If any such document is no longer in the possession of or subject to the control of plaintiffs, state what disposition was made of it and the date of disposition.

IV. an oral communication:

      a.    the date and time it occurred;

      b.    the place where it occurred;

      c.    the complete substance of the communication;

      d.    the identity of each person

          (1)    to whom such communication was made;

          (2)    by whom such communication was made;

          (3)    who was present when such communication was made; and

      e.    the identity of all notes, minutes, memoranda or other documents memorializing or referring to the subject matter of the statement.

14. The terms **"Document"** or **"Documents"** refer to tangible evidence of any type, including the original and all copies, prior drafts and translations of information in any written, typed, printed, recorded or graphic form, however produced or reproduced, regardless of origin or location, that can be located, discovered or obtained by reasonably diligent efforts, including, without limitation, all letters, memoranda, notes, written communications, notes concerning or memorializations of oral statements, communications, conversations, telephone calls or meetings, records, reports, affidavits, statements, charts, tabulations, surveys, studies, schedules, lists, analyses, graphs, notebooks, diaries, calendars, minutes, logs, journal entries, vouchers, orders, checks or canceled checks (front and back), bills, expense accounts, ledgers, books of account,

7

financial statements, shipping documents, receipts, acknowledgments, personal records, statistics, telegrams, teletypes, telexes, telecopies, printouts, files, inter-office and intra-office communications, contracts, agreements, assignments, licenses, instructions, directives, investigative reports, summaries, prospectuses, certificates, drawings, plans, questionnaires, pamphlets, books, booklets, bulletins, newspapers, magazines, presentations, slides, tape recordings, voice recordings, wire recordings, phonograph records, photographs, photographic negatives, video or video recordings, films, motion pictures, microfiche, microfilm, computer disks, computer tapes, CD-ROMs, electronic mail, and any form of computer or network data storage from which information can be obtained or translated.

## REQUESTS FOR ADMISSION

1. Bennett communicated with Winick regarding his agreement with Fameco, while under contract with Fameco.

   Admit: _____        Deny: _____

2. Spector communicated with Winick regarding his agreement with Fameco, while under contract with Fameco.

   Admit: _____        Deny: _____

3. Spector discussed with Winick the possibility of bringing Fameco clients to Winick, while under contract with Fameco.

   Admit: _____        Deny: _____

4. Bennett discussed with Winick the possibility of bringing Fameco clients to Winick, while under contract with Fameco.

   Admit: _____        Deny: _____

5. Spector transmitted Fameco's proprietary contact list to his personal e-mail account prior to resigning from Fameco.

   Admit: _____        Deny: _____

6. Spector communicated with Fameco clients regarding his intention to represent them after his departure from Fameco, while under contract with Fameco.

   Admit: _____        Deny: _____

7. Since terminating his relationship with Fameco, Bennett has provided "Brokerage Services," as that term is

9

defined in his Broker-Salesperson Contract with Fameco, to Wawa Food Markets, Crunch Fitness, Buffalo Wild Wings, Kay Jewelers, Wendy's Restaurants, or Pep Boys Auto in connection with transactions involving real property located in New Jersey and less than 101 miles from any point within Middlesex County, NJ.

        Admit: _____        Deny: _____

8. Since terminating his relationship with Fameco, Spector has provided "Brokerage Services," as that term is defined in his Broker-Salesperson Contract with Fameco, to Chipotle Mexican Grill or Jersey Mike's in connection with transactions involving real property located in New Jersey and less than 101 miles from any point within Philadelphia County, PA.

        Admit: _____        Deny: _____

9. Since terminating his relationship with Fameco, Bennett has contacted Fameco clients regarding those clients beginning a business relationship with Winick and/or Winick NJ.

        Admit: _____        Deny: _____

10. Since terminating his relationship with Fameco, Spector has contacted Fameco clients regarding those clients beginning a business relationship with Winick and/or Winick NJ.

        Admit: _____        Deny: _____

11. At the time of Bennett's termination, there were active deals with Crunch Fitness that Bennett did not disclose on his Termination Deal Sheet.

   Admit: _____    Deny: _____

12. At the time of Bennett's termination, there were active deals with Wawa that Bennett did not disclose on his Termination Deal Sheet.

   Admit: _____    Deny: _____