UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FAMECO REAL ESTATE, L.P., <br><br> Plaintiff, <br><br> v. <br><br> TYLER BENNETT, DANIEL SPECTOR, WINICK REALTY GROUP LLC, and WINICK REALTY GROUP LLC NJ <br><br> Defendants. | Hon. Joel A. Pisano, U.S.D.J. <br> Hon. Tonianne J. Bongiovanni, U.S.M.J. <br><br> Civil Action No. 3:12-cv-06102 (JAP)(TJB) <br><br> <u>**RETURN DATE**: December 3, 2012</u> |

**<u>MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF DEFENDANTS
TYLER BENNETT AND DANIEL SPECTOR TO DISMISS</u>**

> **GREENBAUM, ROWE, SMITH & DAVIS LLP**
> Metro Corporate Campus One
> P.O. Box 5600
> Woodbridge, NJ  07095-0988
> Tel:  (732) 549-5600
> Fax:  (732) 549-1881
> Attorneys for Fameco Real Estate, L.P.

Of Counsel and On the Brief:
    Eric Tunis

On the Brief:
    Robert J. Flanagan III

## TABLE OF CONTENTS

                                                                    Page

PRELIMINARY STATEMENT ............................................... 1

STATEMENT OF FACTS .................................................. 2

LEGAL ANALYSIS ...................................................... 5

    FAMECO HAS DEMONSTRATED COMPLETE DIVERSITY OF
    CITIZENSHIP AMONG THE PARTIES IN THIS MATTER. .............. 5

CONCLUSION ......................................................... 12

## TABLE OF AUTHORITIES

Page

**Cases**

Carden v. Arkoma Assoc.,
494 U.S. 185, 110 S. Ct. 1015, 108 L. Ed. 2d 157
(1990) .......................................................... 6

Carlsberg Resources Corp. v. Cambria Savings and Loan
Association,
554 F.2d 1254 (3d Cir. 1977) ............................. 6, 7

Gilbert v. David,
235 U.S. 561, 35 S. Ct. 164, 59 L. Ed. 360 (1915) ............ 5

Leprino Foods Co. v. Gress Poultry, Inc.,
379 F. Supp. 2d 650 (E.D.Pa. 2005) .......................... 9

Morson v. Kreindler & Kreindler, LLP,
616 F. Supp. 2d 171 (D.Ma. 2009) ...................... 7, 8, 9

Serapion v. Martinez,
119 F. 3d 982 (1st Cir. 1997) ............................ 7, 8

Swiger v. Allegheny Energy, Inc.,
540 F.3d 179 (3d Cir. 2008) ................................. 5

Zambelli Fireworks Manufacturing Co., Inc. v. Wood,
592 F.3d 412 (3d Cir. 2010) ................................. 5

**Statutes**

28 U.S.C. § 1332 ............................................. 5

28 U.S.C. § 1332(c) .......................................... 5

**PRELIMINARY STATEMENT**

Plaintiff Fameco Real Estate, L.P. ("Fameco") submits this memorandum of law in opposition to the motion of defendants Tyler Bennett and Daniel Spector to dismiss the instant action based on lack of diversity of citizenship and, as a result, subject matter jurisdiction.

Fameco, through its First Amended Complaint ("Amended Complaint"), has demonstrated that complete diversity of citizenship exists between Fameco and all of the defendants. As set forth in its Amended Complaint, all of Fameco's general and limited partners are citizens of Pennsylvania, and none of the defendants is a citizen of Pennsylvania.

Nonetheless, Bennett and Spector claim, to the contrary, that complete diversity does not exist because Jay Miller, an independent salesperson working for Fameco is referred to as a partner on Fameco's website and client alerts, and Messrs. Bennett, Spector, and Miller all reside in New jersey. However, as set forth herein, the agreements that govern Mr. Miller's relationship with Fameco explicitly identify him as an independent contractor and deny him all relevant indicia of a partner under Pennsylvania law. Thus the fact that Mr. Miller is a New Jersey resident is irrelevant for purposes of the Court's diversity analysis.

**STATEMENT OF FACTS**

Fameco is a limited partnership, with a general partner of Famestarr I Corp., a Pennsylvania corporation with its principal place of business in Pennsylvania. (ECF Doc. No. 4 at ¶7). Fameco's limited partners are as follows:

(a) Jeffrey Scott Cohen, a citizen of the Commonwealth of Pennsylvania, and who resides in Blue Bell, PA;

(b) John Pasquale Fasciano, a citizen of the Commonwealth of Pennsylvania, and who resides in Wayne, PA;

(c) Adam Michael Kohler, a citizen of the Commonwealth of Pennsylvania, and who resides in Maple Glen, PA;

(d) Jonathan David Kushner, a citizen of the Commonwealth of Pennsylvania, and who resides in Devon, PA;

(e) Steven John O'Malley, a citizen of the Commonwealth of Pennsylvania, and who resides in Radnor, PA;

(f) David Bryan Orkin, a citizen of the Commonwealth of Pennsylvania, and who resides in Holland, PA;

> (g) Brandon Lee Famous, a citizen of the Commonwealth of Pennsylvania, and who resides in Chester Springs, PA; and
>
> (h) Richard William Schuch, a citizen of the Commonwealth of Pennsylvania, and who resides in Bala Cynwyd, PA.

(Id. at ¶8).

The foregoing list includes all of Fameco's members. In particular, Mr. Miller is not a member of Fameco. Since on or about July 16, 2006, he has been an independent contractor working as a real estate salesperson for Fameco pursuant to a Salesperson Agreement. (Declaration of Michael Levin ("Levin Dec."), ¶ 2). Under the Salesperson Agreement, he is an independent contractor of Fameco and does not have authority to execute any documents or otherwise obligate Fameco in any way "without first obtaining the written consent of" Fameco. (Levin Dec., Exhibit A).

Fameco's relationships with its general partner and limited partners are governed by its Limited Partnership Agreement ("LP Agreement"). (Levin Dec., ¶ 4). Mr. Miller has never been a signatory to the LP Agreement. (Id. at ¶ 5).

On or about February 25, 2009, Mr. Miller entered into a letter agreement with Fameco regarding his election as a non-equity partner of the Company and the relationship between non-

equity partners and the Company and its equity partners ("NE Agreement"). (Levin Dec., Exhibit B). The NE Agreement provides, among other things, that non-equity partners:

    (i) "have a contractual relationship with the Company that is outside the purview of the LP Agreement," (id. at 2);

    (j) "do not sign the LP Agreement," (id.);

    (k) "are not asked to contribute capital," (id.);

    (l) "have no voting or ownership rights in the Company or its assets," (id.);

    (m) "have no liability or financial exposure for liabilities of the Company," (id.);

    (n) do not share in the profits of the company, (id. at 3-4); and

    (o) may be given access to certain financial information and other information about the Company, (id. at 3).

The NE Agreement also provides that as a non-equity partner, Mr. Miller will "continue to function as an independent contractor" for the Company and that his duties, responsibilities and compensation continue to be governed by his Salesperson Agreement. (Id. at 3-4).

Consistent with Mr. Miller's status as an independent contractor, Fameco has issued a Form 1099 to him annually since

-4-

his relationship with Fameco began, unlike equity partners, who receive Form K-1's. (Levin Dec. ¶ 9).

## LEGAL ANALYSIS

### FAMECO HAS DEMONSTRATED COMPLETE DIVERSITY OF CITIZENSHIP AMONG THE PARTIES IN THIS MATTER.

Fameco has properly established complete diversity of citizenship as required by 28 U.S.C. § 1332. In order to bring a case in this Court based upon diversity, the party claiming diversity must demonstrate that complete diversity exists, i.e., no plaintiff is a citizen of the same state as any defendant. Zambelli Fireworks Manufacturing Co., Inc. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010).

A natural person is considered a citizen of the state in which he or she is domiciled. Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 182 (3d Cir. 2008)(citing Gilbert v. David, 235 U.S. 561, 569, 35 S. Ct. 164, 59 L. Ed. 360 (1915)). A corporation is considered a citizen of both the state in which it is incorporated and the state in which it has its principal place of business. Id. at 182 (citing 28 U.S.C. § 1332(c)).

However, partnerships and other unincorporated associations, "are not considered 'citizens' as that term is used in the diversity statute." Id. at 182 (citations omitted). It is well established that the citizenship of such unincorporated entities, including limited partnerships, is

determined by the citizenship of all of the members of the entity. Carden v. Arkoma Assoc., 494 U.S. 185, 195-97, 110 S. Ct. 1015, 108 L. Ed. 2d 157 (1990). The Third Circuit has held that for purposes of diversity a limited partnership's members include both general and limited partners. Carlsberg Resources Corp. v. Cambria Savings and Loan Association, 554 F.2d 1254, 1258-59 (3d Cir. 1977).

In Carlsberg Resources, the case upon which Bennett and Spector exclusively rely, the plaintiff, a limited partnership, claimed that the Court should only look to the citizenship of its general partners, and not its limited partners, to determine if there was complete diversity. Id. at 1259-60. The Court rejected this claim, and stated that

> [w]hen the rule of complete diversity is read in conjunction with the principle that the citizenship of a partnership depends upon that of its members, it becomes clear that diversity jurisdiction may not be obtain here, unless all of the members of the plaintiff partnership are of distinct citizenship from all of the defendants.

[Id. at 1259 (emphasis added).]

There was no dispute in Carlsberg Resources that plaintiff's limited partners were members of the partnership and defendants' citation of Carlsberg Resources suggests their belief that while Mr. Miller may be in a different class then other Fameco partners, he is still a member of the Company.

However, the agreements that govern his relationship with Fameco demonstrate beyond contradiction that he is _not_ a member of Fameco. Thus, this case raises an issue that has never been addressed by the Third Circuit, that is, whether the residence of a person holding the title of "partner" without any of the indicia of a member of the partnership is relevant for purposes of diversity analysis. As a result, the current case is clearly distinguishable from Carlsberg Resources.

Instead, the current case is on all fours with Morson v. Kreindler & Kreindler, LLP, 616 F. Supp. 2d 171 (D.Ma. 2009). In Morson, the plaintiff sued the defendant law firm in state court in Massachusetts, and defendant removed the matter to federal court based upon diversity jurisdiction. Id. at 171. Plaintiff filed a motion to remand, claiming that diversity was not complete because both he and the resident agent/contract partner of the firm's Boston office resided in Massachusetts. Id. at 171-72.

In analyzing whether there was complete diversity, the Court stated that "partners come in varying shapes and sizes," and "determining whether an attorney is a partner or a mere employee 'cannot be decided solely on the basis that a partnership calls -- or declines to call -- a person a partner.'" Id. at 173 (quoting Serapion v. Martinez, 119 F. 3d 982, 988 (1st Cir. 1997)). The Court found that it "must peer

beneath the label and probe the actual circumstances of the person's relation with the partnership." Id. The Court then looked to law of the state in which the partnership was formed to determine who the members of the defendant truly were. Id. After applying New York partnership law, the Court determined that none of the lawyers in the firm's Boston office was an equity partner and, therefore, a member of the firm for purposes of diversity. Id.

The Court specifically noted that the law firm's professionals consisted of equity partners, contract partners, attorneys who were "of counsel," and associates. Id. at 172. While equity partners were compensated based on the earnings of the partnership, the contract partners were paid a fixed salary. Id. In addition, the contract partnership did "not carry with it any indicia of ownership in the firm," as it did not make capital contributions, did not share in profits, had no ownership interest, and were not exposed to liability for the partnership's debts. Id. Consistent with their status as employees, contract partners also filed a Form W-2s with their tax returns, while equity partners filed K-1s. Morson, supra, 616 F. Supp. 2d at 172. As a result, the Court concluded that the resident agent was an employee and not a partner, and therefore, "his citizenship is irrelevant for purposes diversity analysis." Id.

This court should take guidance from the court in Morson, and look to the law of Pennsylvania, the state in which Fameco was formed, to determine whether Mr. Miller is a member of Fameco for diversity purposes.[1] Under Pennsylvania partnership law, "[a] partnership is an association of two or more persons to carry on as co-owners a business for profit." Leprino Foods Co. v. Gress Poultry, Inc., 379 F. Supp. 2d 650, 655 (E.D.Pa. 2005). "To determine if a partnership exists, there must be 'clear, mutual assent on the part of two or more persons' to form a partnership." Id. (citations omitted). "An established pattern of profit and los sharing may support a finding of a partnership." Id. (citation omitted). Further, a court may look to the partnership's tax return to determine whether there was an intent to form a partnership. Id.

In this case, it is quite apparent that while Fameco may refer to Mr. Miller as a "partner," on its website and in client advisories, the LP Agreement and NE Agreement clearly reflect that he is not a Fameco member under Pennsylvania law. He has never been a signatory to the LP Agreement. (Levin Dec., ¶ 5).

---

[1] It is important to note that although the Third Circuit declined to refer to state law in deciding whether to treat limited partners differently than general partners for purposes of determining jurisdiction, it had no occasion to consider the relevance of the residence of a non-member with respect to such an issue. A partnership is the creation of state law, and therefore, the issue of whether someone is actually a member of a partnership necessarily must be determined by state law as well.

In addition, the NE Agreement provides, among other things, that non-equity partners:

(p) "have a contractual relationship with the Company that is outside the purview of the LP Agreement," (Levin Dec., Exhibit B at 2);

(q) "do not sign the LP Agreement," (id.);

(r) "are not asked to contribute capital," (id.);

(s) "have no voting or ownership rights in the Company or its assets," (id.);

(t) "have no liability or financial exposure for liabilities of the Company," (id.);

(u) do not share in the profits of the company, (id. at 3-4); and

(v) may be given access to certain financial information and other information about the Company, (id. at 3).

The NE Agreement also provides that as a non-equity partner, Mr. Miller will "continue to function as an independent contractor" for the Company and his duties, responsibilities and compensation continue to be governed by his Salesperson Agreement, which also bars him from executing documents on Fameco's behalf or otherwise obligate the Company in any way. (Id. at 3-4 and Exhibit A). Consistent with Mr. Miller's status as an independent contractor, Fameco has issued him a Form 1099

-11-

annually since his relationship with Fameco began, unlike equity partners, who receive Form K-1's. (Levin Dec. ¶ 9).

Therefore, in light of the foregoing, it is apparent under Pennsylvania law that Miller is not a member of Fameco and therefore, his citizenship is irrelevant for purposes of the Court's diversity analysis.

## CONCLUSION

For all of the foregoing reasons, Fameco respectfully requests that the Court deny defendants motion to dismiss for lack of subject matter jurisdiction.

<div style="text-align: right;">

Respectfully submitted,

**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Attorneys for Plaintiff
Fameco Real Estate, L.P.


_____/s/ Eric Tunis_____
ERIC TUNIS

</div>

Dated:  November 19, 2012