**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Eric Tunis, Esq.
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095-0988
Tel: (732) 549-5600
Fax: (732) 549-1881
Attorneys for Plaintiff, Fameco Real
Estate, L.P.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FAMECO REAL ESTATE, L.P.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TYLER BENNETT, DANIEL SPECTOR, WINICK REALTY GROUP LLC, and WINICK REALTY GROUP LLC NJ<br><br>　　　　Defendants. | Civil Action No. 3:12-cv-06102 (JAP)(TJB)<br><br>**DECLARATION OF MICHAEL LEVIN IN OPPOSITION TO THE MOTION OF DEFENDANTS TYLER BENNETT AND DANIEL SPECTOR TO DISMISS** |

**MICHAEL LEVIN**, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I make this Declaration in opposition to the motion of defendants Tyler Bennett ("Bennett") and Daniel Spector ("Spector" collectively with Bennett as "defendants") to dismiss Fameco's Amended Complaint due to lack of subject matter jurisdiction, and I am fully familiar with the facts set forth herein.

2. Since on or about July 16, 2006, Jay Miller ("Miller") has been an independent contractor working as a real estate

salesperson for plaintiff Fameco Real Estate L.P. ("Fameco" or "Company") pursuant to a Salesperson Agreement.

3. Under the Salesperson Agreement, Miller is an independent contractor of Fameco and does not have authority to execute any documents or otherwise obligate Fameco in any way "without first obtaining the written consent of" Fameco. The relevant sections of the Salesperson Agreement with Fameco are attached hereto as **Exhibit A**.

4. Fameco is a Pennsylvania limited partnership and its relationships with its general partner and limited partners are governed by its Limited Partnership Agreement ("LP Agreement").

5. Miller has never been a signatory to the LP Agreement.

6. On or about February 25, 2009, Miller entered into a letter agreement with Fameco regarding his election as a non-equity partner of the Company and the relationship between non-equity partners and the Company and its equity partners ("NE Agreement"). A true and accurate copy of the NE Agreement is attached hereto as **Exhibit B**.

7. The NE Agreement provides, among other things, that non-equity partners:

    (a) "have a contractual relationship with the Company that is outside the purview of the LP Agreement," id. at 2;

    (b) "do not sign the LP Agreement," id.;

      (c)   "are not asked to contribute capital," id.;

      (d)   "have no voting or ownership rights in the Company or its assets," id.;

      (e)   "have no liability or financial exposure for liabilities of the Company," id.;

      (f)   do not share in the profits of the company, id. at 3-4; and

      (g)   may be given access to certain financial information and other information about the Company, id. at 3.

8.   The NE Agreement also provides that as a non-equity partner, Miller will "continue to function as an independent contractor" for the Company and his duties, responsibilities and compensation continue to be governed by his Salesperson Agreement. Id. at 3-4.

9.   Consistent with Miller's status as an independent contractor, Fameco has issued to him a Form 1099 annually since his relationship with Fameco began, unlike equity partners, who receive Form K-1's.

3

I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED** on November 19, 2012

_____
MICHAEL LEVIN

# EXHIBIT A

# BROKER-SALESPERSON CONTRACT

BY THIS AGREEMENT entered into this 17th day of July, 2006 by and between FAMECO REAL ESTATE, L.P., a Pennsylvania limited partnership, hereinafter called BROKER, and Jay Miller, hereinafter called SALESPERSON, intending to be legally bound hereby, Broker and Salesperson agree to the following conditions of their relationship, effective as of January 1, 2005.

## AGREEMENT

1. Broker and Salesperson agree that the terms and conditions of the relationship between Broker and Salesperson shall be as set forth herein.

## BROKER

2. Broker hereby represents that it is licensed under the laws of the various states in which it has offices as a broker dealing in real estate.

## SALESPERSON

3. Salesperson hereby represents that Salesperson is (a) a person duly licensed under the laws of the state in which he or she is officed as a salesperson affiliated with Broker; or (b) a person duly licensed under the laws of the state in which he or she is officed as a broker and is affiliated with Broker as a real estate salesperson.

## OBLIGATIONS

4. Salesperson shall read and be governed by the Code of Ethics of the National Association of Realtors, the real estate law of the state in which Salesperson is officed, licensed and/or transacts business, the by-laws and any rules and regulations of the local real estate board if Broker is a member, the General Rules and Policies of Broker attached hereto as Exhibit "A" (herein referred to as "Broker's Policies") and any future modifications, amendments or additions to any of the foregoing. The provisions of Broker's Policies are hereby incorporated in this Agreement and they constitute a part hereto as though set forth in full, and the provisions thereof, as from time to time in effect shall be binding on Broker and Salesperson. Any change in Broker's Policies may be adopted by Broker in its sole discretion, without consultation with Salesperson, and shall be effective and constitute an amendment and modification of this Agreement upon receipt by Salesperson of a copy thereof. If there is any conflict between the provisions of this Agreement and Broker's Policies, Broker's Policies shall govern.

5. Broker agrees to make available to Salesperson all current listings in the office except such as Broker may find expedient to handle himself or to place solely with another Salesperson.

6. Salesperson agrees that he or she will not knowingly make any misrepresentations to any prospective purchaser, seller, landlord or tenant, and will use reasonable due diligence to

{00001252.DOC}

required from time to time in Broker's Policies; and Salesperson shall furnish satisfactory evidence of such insurance to Broker upon request.

17. Salesperson shall remain continuously licensed by the state in which he or she is officed or acts as a broker to sell or lease real estate. In the event Salesperson voluntarily joins the local real estate board, or in the event membership is required by the local real estate board rules, Salesperson shall comply with all such rules and membership requirements.

18. Salesperson shall not execute any agreements, contracts or other legal documents on behalf of Broker. Salesperson shall also not obligate Broker in any way, including without limitation, for materials or services, or for the purchase or lease of real or personal property or in any other way, without first obtaining the written consent of Broker.

19. Salesperson shall use only real estate forms approved by Broker.

20. Broker reserves the right to reject any listing deemed unsatisfactory to Broker and to return said listing to the owner.

21. Salesperson acknowledges that he or she is an independent contractor of Broker, and that he or she will abide by all Broker's Policies, now in force or subsequently adopted by Broker and will adhere to all standard office procedures of Broker. Furthermore, Salesperson has received a copy of Broker's written policy manual updated as of May 2004 ("Manual"), attached hereto, governing employment with Broker (and has acknowledged in writing the receipt thereof). Broker and Salesperson agree that the following portions of the Manual are incorporated by reference into this Agreement, and that such portions of the Manual shall apply to Salesperson as if Salesperson is an employee of Broker, except to the extent such portions of the Manual are inconsistent with one or more provisions of this Agreement:

| Policy Manual Section | Subject Matter |
|---|---|
| Section I. | "Introduction" |
| Section II. A. | "Equal Employment Opportunity" |
| Section II. D. | "Sexual Harassment" and "Harassment" |
| Section III.A. | "Work Day Schedules" and attendance policies |
| Section IV. A. | "Discharge and Other Discipline" |
| Section IV. C. | "Return of Property" |
| Section IV. D. | "Smoking Policy" |
| Section IV. E. | "Electronic Mail, Communications and Information Policy" |
| Section IV. F. | "Computer Software" |
| Section IV. G. | "Confidentiality of Corporate Information" |
| Section IV. H. | "Conflicts of Interest" |

# EXHIBIT B



Retailer Representation • Owner Representation • Management Services • Investment Sales

**PERSONAL AND CONFIDENTIAL**

February 18, 2009

Mr. Jay Miller
24 Belmont Drive
Robbinsville, New Jersey 08691

Re:   **Election as a Non-Equity Partner**

Dear Jay:

Congratulations. We are pleased to advise you that you have been elected a non-equity partner of Fameco Real Estate, L.P.

This letter explains and describes the position of non-equity partner within Fameco Real Estate, L.P. and the relationship of non-equity partners to equity partners and other individuals. Following that explanation, specific contractual provisions are also included for your review and signature. To the extent that the explanatory and descriptive provisions differ from the specific contractual provisions contained herein, the specific contractual provisions shall control.

Fameco Real Estate, L.P. (the "Company") is a Pennsylvania limited partnership. As a business, the Company is owned and run by those individuals who have signed the Limited Partnership Agreement (the signatory partners, who constitute the "partners" for purposes of the Limited Partnership Agreement). Among other things, those partners contribute to the Company's financial capital. They are therefore also called the equity partners. Individuals can be elected equity partners, and invited to sign the Limited Partnership Agreement (the "LP Agreement"), only in accordance with the terms of the LP Agreement. In broad terms, an equity partner (1) is elected to that position based on a collective evaluation by the Company's then equity partners of the contributions that that particular individual has made, or is expected to make, to the Company, as more particularly set forth in the "Road to the Pro Shop" memorandum, a copy of which has been provided to you, and (2) must make a significant capital contribution based on the value of the Company.

Company salespeople and executives who qualify are expected to be elected non-equity partners and at the absolute discretion of the equity partners, may, after a period of time, be considered for election to equity partnership. Senior individuals entering the Company from other organizations may be elected non-equity partner, equity partner, or some other



Mr. Jay Miller
February 18, 2009
Page 2

specifically created and mutually acceptable contractual relationship, as the equity partners shall determine.

Since non-equity partners have a contractual relationship with the Company that is outside the purview of the LP Agreement, non-equity partners do not sign the LP Agreement. They are not asked to contribute capital, and they have no voting or ownership rights in the Company or its assets. They also have no liability or financial exposure for liabilities of the Company, absent specific contributory conduct. While keeping these important distinctions in mind, non-equity partners have many responsibilities and opportunities to participate in personal and professional development as an important part of the Company.

Non-equity partners are generally expected to contribute the same level of effort to the Company as equity partners. As a non-equity partner, you will be expected to present yourself to the community as among the best individuals our profession has to offer. You will be expected to commit the time, effort and energy to be successful in your business matters, to promote the Company in the marketplace, and to assist in such other endeavors as may be sponsored and accepted by the Company from time to time.

We are a hard working company. Based on trends among other similar real estate brokerage firms, we expect increasing efforts by our partners to contribute to our current and future financial and professional success. We also expect our partners to make significant efforts in order to meet the Company's goals for contributions of partner time and energy to the communities where we do business and to our client's needs.

Over time, the equity partners will be assessing you and your work. After some initial assessment, over an appropriate period, you will receive advice regarding your personal and professional progress. In addition to being advised of your personal progress, you will also be advised of the Company's evolving perception of its needs as reflected in budgets and other planning materials.

It is very important that you commit yourself, on a daily basis, to the needs of the Company. If you see those needs diverging from your personal goals, please discuss this with the equity partners. It is our goal to have a successful Company which also provides a platform for each partner to achieve his own goals for personal growth and for professional opportunity and success. The Company is, however, also a business, which must be successful as a business if it is going to support all of us in achieving our personal goals.

As a non-equity partner, you may be given access to certain financial and other information about the Company. This information is confidential, and you shall hold such



Mr. Jay Miller
February 18, 2009
Page 3

information in confidence for the benefit of the Company. You are being given this information so that we may solicit your advice and participation in the Company's administration and the conduct of our business. You are expected to direct your efforts as a non-equity partner toward the improvement of the Company's financial success. You are also welcome to use it in your own financial and career planning, while maintaining the confidential nature of this information.

You will be invited to work on Company administrative matters and other projects. Your participation and advice in these matters is expected and encouraged. The equity partners will ordinarily invite your advice and participation through Company management; however, the equity partners nevertheless reserve the sole discretion to determine when and how equity partners should meet in order to consider and decide matters separately as the equity holders or owners of the Company.

Generally, your annual commissions will continue to be determined each year in accordance with the terms of your current broker salesperson contract. That contract will not in any way be affected by the terms of this letter agreement. Your annual commissions may be increased by a bonus amount payable pursuant to this letter agreement. As a non-equity partner, except as specifically set forth below, your annual commissions will not be increased or reduced based upon the Company's financial performance.

At least annually, your work will be reviewed and discussed with those equity partners who are designated by the Company to perform such evaluations. As mentioned above, the Company is committed to providing advice and assistance to you so that you can more easily attain your personal growth and career goals within the Company.

### SPECIFIC CONTRACTUAL PROVISIONS

By signing below we both acknowledge the following specific rights, obligations, and other contractual provisions associated with your status as an income partner of the Company:

1.  <u>Term</u>. This Agreement shall begin on January 1, 2009 (the "Effective Date"), and shall continue from year to year, unless sooner terminated in accordance with Paragraph 8 hereof (the "Term"), upon the same terms and conditions in effect on the Effective Date, unless and until such terms and conditions are modified by mutual agreement.

2.  <u>Position and Title</u>. You shall continue to function as an independent contractor and your duties and responsibilities will continue to be governed by your broker salesperson



Mr. Jay Miller
February 18, 2009
Page 4

contract (the "Salesperson Contract"). Nevertheless, your title shall be changed to a Non-Equity Partner in the Company. Your business cards, letterhead, etc., shall indicate your position as a "Partner" in the Company.

3. <u>Office</u>. You will continue to be associated with the Company's main office.

4. <u>Support</u>. The Company will continue to provide you with such office space and such administrative support and other support services, as it was providing to you immediately before the Effective Date.

5. <u>Compensation</u>.

(a) During the Term, you shall receive the annual commissions as are provided for in your Salesperson Contract.

(b) Beginning with your third full calendar as a non-equity partner, for any calendar year during the Term in which your gross commissions exceed the aggregate sum of $500,000 before splits, provided that the Company's financial performance was profitable during the calendar year in question, you shall also be entitled to an annual bonus. If payable, this bonus amount shall be five (5%) percent of the gross commissions you have received for the calendar year in question as of the last day of each such calendar year, but shall be payable prior to the end of the first quarter of the next calendar year. Moreover, if you are not a non-equity partner on the last day of any calendar year, you shall not be entitled to the payment of any bonus amount for that year. .

(c) During the Term, you shall be entitled to a "benefits" package of $10,000 per annum which shall consist of an expense account and shall allow you to expense up to $10,000 on automobile expenses, travel expenses or other expenses ancillary to your work on behalf of the Company.

6. <u>Development Partnerships</u>. You will be given the opportunity to participate and invest as an equity partner in certain development partnerships along with the Company's equity partners for development projects identified after the Effective Date. Your right to invest, participate and acquire an equity interest in such partnerships shall be no more than twenty five percent (25%) of the equity interest available to each equity partner of the Company and shall otherwise be on the same terms and conditions as are available to each equity partner of the Company. In the event you either leave the Company or you are terminated by the Company, the equity partners shall have the right to buy back any and all interest that you may have in any development partnerships based on



Mr. Jay Miller
February 18, 2009
Page 5

the then fair market value of your interests in such development partnerships.

7.  Relationship with the Company. As a non-equity partner in the Company, your relationship with the Company is governed by your Salesperson Contract and this letter agreement and not the LP Agreement. As a non-equity partner, you do not have any equity in the Company and, accordingly, are not assuming any of the financial or other obligations of the Company. The Company agrees, from the assets of the Company only, to indemnify and hold you harmless from any and all expenses, losses, claims, damages or liabilities, joint or several, of whatever kind, based upon any claim for which you are, or are alleged to be, vicariously liable by reason of the fact that you are known as a partner of the Company, provided that, if you are involved in the matter giving rise to the claim, you acted in good faith and in a manner you reasonably believed to be in, or not opposed to, the best interests of the Company and, with respect to any criminal proceeding, had no reasonable cause to believe your conduct was unlawful. As a non-equity partner you will be expected to attend certain meetings of the Company's equity partners, typically one meeting per month. You are not entitled to any vote as a partner, and you will not attend those equity partners' meetings where the equity partners have decided to limit attendance to equity partners only. It is the intent of the parties that you, as a non-equity partner, shall stand in a fiduciary role to the Company, notwithstanding the fact that this relationship arises out of this letter agreement and not the LP Agreement.

8.  Termination.

(a)  You may terminate this letter agreement at any time, with or without cause, upon thirty (30) days prior written notice, unless the Company, in its sole discretion, determines to allow a shorter notification period. The Company may terminate this letter agreement at any time and upon ten (10) days prior written notice. In addition, the Company may terminate this letter agreement earlier, if the Company determines that your professional or personal conduct is or has been grossly prejudicial to the goodwill or reputation of the Company. You agree to continue to act in the best interests of the Company at all times prior to the end of any notice period agreed to by the parties. The preceding sentence is intended to confirm that you stand in a fiduciary relationship to the Company. The fiduciary relationship is created by this letter agreement.

(b)  This letter agreement shall automatically terminate upon your death, the termination of your Salesperson Contract, however caused, your retirement, your total disability or other departure or upon the dissolution of the Company. Unless you or the Company specifically provides otherwise, the termination of this letter agreement shall not affect the continuing validity of your Salesperson Contract.



Mr. Jay Miller
February 18, 2009
Page 6

        (c) Your continued status as a non-equity partner is dependent on the contribution by you of additional value to the Company through direct financial contributions to the Company as well as responsibility for other initiatives such as training, mentoring, marketing or other areas as directed or determined by the equity partners. The failure by you to maintain the standards demonstrated as of the Effective Date with respect to any of the foregoing may result in the termination by the Company of this Agreement at any time and upon ten (10) days prior written notice.

        9.    Descriptive Headings. The captions which appear at the beginning of each paragraph hereof are included solely for convenience of reference and are not intended to affect the substantive terms hereof.

        10.    Entire Agreement. This letter agreement constitutes and sets forth the entire agreement and understanding between you and the Company regarding the subject matter hereof, but it shall not contravene or control any provision of your Salesperson Contract. This letter agreement may not be altered, amended or terminated, except by an instrument in writing signed by you and the Company

        11.    Notices. Each notice relating to this letter agreement shall be in writing and delivered in person or by registered or certified mail. All notices to the Company shall be addressed to its main office and place of business. All notices to you shall be addressed to you at the address set forth in the Company's records.

        12.    Confidentiality. In connection with your status as a non-equity partner, you will receive or have access to confidential proprietary information concerning the Company, including without limitation financial information, client information, trade secrets and the like (the "Confidential Information"), which is non-public. You shall not disclose or cause to be disclosed any Confidential Information to any person or use any Confidential Information for your own purposes or your own account, except as otherwise required by any regulatory authority, law or regulation, or by legal process.

        13.    Governing Law. This letter agreement shall be governed as to validity, interpretation and effect in accordance with the laws of the Commonwealth of Pennsylvania. The invalidity or unenforceability of any particular provision set forth herein shall not affect the other provisions hereof and this letter agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

        14.    No Advice. You specifically acknowledge that the Company and its counsel have not provided any legal, tax, accounting or business counsel or advice to you in connection with your decision to execute this letter agreement.



Mr. Jay Miller
February 18, 2009
Page 7

Except as provided to the contrary herein or in a subsequent agreement, you hereby agree to accept and to abide by the Company's practices, policies and decisions as they are made from time to time.

If you have any questions about your status as a non-equity partner, please contact me.

Again, congratulations and welcome to non-equity partnership at Fameco Real Estate, L.P. We look forward to your energy and contributions to our company.

I am enclosing two originals of this letter agreement. Please indicate your acceptance of the terms of this letter agreement by signing and returning one of the originals to me.

Sincerely,

FAMECO REAL ESTATE, L.P.
By: Famestarr I Corp., its general partner

By: _____
Title: _____

I HAVE READ AND ACCEPT
THE SPECIFIC CONTRACTUAL
PROVISIONS ABOVE.

_____
Jay Miller

Dated: 2-25-09