LOMURRO, DAVISON, EASTMAN & MUNOZ, P.A.
Monmouth Executive Center
100 Willow Brook Road, Suite 100
Freehold, NJ 07728
(732) 462-7170
Attorneys for Defendants, Tyler Bennett & Daniel Spector

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FAMECO REAL ESTATE, L.P.,<br><br>    Plaintiff,<br><br>  v.<br><br>TYLER BENNETT, DANIEL SPECTOR, WINICK REALTY GROUP, LLC and WINICK REALTY GROUP LLC NJ,<br><br>    Defendants. | Case No. 12-CV-06102-JAP-TJB<br><br>Civil Action<br><br>**DECLARATION OF DANIEL SPECTOR** |

  I, DANIEL SPECTOR, of full age, do hereby declare under penalty of perjury, as follows:

  1.  I am a Defendant in this matter. I am licensed as a salesperson to sell and lease real estate in the State of New Jersey. I am a former salesperson for Plaintiff, Fameco Real Estate, L.P. ("FRELP"). My time at FRELP began in 2008 and I resigned from FRELP on June 27, 2012.

  2.  I make this Declaration in further support of the motion to dismiss FRELP's First Amended Complaint due to lack of

subject matter jurisdiction and specifically to bring to the Court's attention FRELP's consistent and continual representations to myself, to FRELP's other employees and associates and to the public at large that Jay Miller is an unqualified FRELP Partner.

3. Specifically, in early 2009, FRELP circulated an intra-office announcement advising that Jay Miller was named a FRELP Partner. The announcement that Jay Miller became a Partner was unqualified. It failed to designate Jay Miller as a non-equity Partner and neglected to distinguish his status within the Company from the status of all remaining FRELP Partners, equity or otherwise.

4. As a result of FRELP's announcement, it was my impression that Jay Miller was named a FRELP Partner and had the same responsibilities, obligations and authority as the undisputed equity Partners identified in the Declaration of Michael Levin submitted in opposition to this motion. To the best of my knowledge, FRELP's other employees and associates had the same impression.

5. Likewise, at all times during my affiliation with FRELP, the company held Jay Miller out to me and its other employees and associates as a Partner with equal authority and responsibilities as the undisputed equity Partners. I relied on these representations while tending to my daily responsibilities

2

as a FRELP salesperson.  Although FRELP has cut-off my access to my FRELP files and e-mails, documents supporting FRELP's holding out Jay Miller as an unqualified Partner and Principal of the company are attached as *Exhibits A - C* to the Declaration of Mathew K. Blaine, Esq., submitted on November 9, 2012 in support of this motion.  (See ECF Doc. No. 7-1 through 7-4).

6. Never once was I advised that I should not seek out Jay Miller with respect to any of FRELP's operations or management issues because he was merely a non-equity Partner with limited authority and responsibilities.

7. Jay Miller also represented to me on more than a few occasions that he was a FRELP Partner.  He never qualified this representation nor advised me that his obligations and responsibilities were limited in comparison to the undisputed equity Partners.

8. At times, Jay Miller relayed to me information concerning FRELP's management and operations.  As a result of my reliance upon FRELP's and Jay Miller's representations concerning his status as a Partner, I never sought confirmation of this information from any of FRELP's other Partners because I assumed the information was accurate, as it was coming from a Partner.

9. While I was a salesperson at FRELP, there were always issues concerning lack of sufficient supervision and management

3

of FRELP's office in Iselin, New Jersey (the "New Jersey office"), which was where I worked.

10. Earlier this year, approximately one to two months prior to my resignation, Jay Miller appeared in FRELP's New Jersey office and advised all of FRELP's employees and associates stationed there that he was taking over one of the vacant offices and would serve as the FRELP Partner in charge of the office to resolve these outstanding issues and get the office in order. Jay Miller advised us that he was going to be FRELP's Partner presence in the New Jersey office, and that the office was going to run differently than it had before.

11. I believe that Jay Miller claimed the office that was next to mine. FRELP's undisputed equity Partner and the broker of record for the New Jersey office, Jeff Cohen, had previously used the office once or twice a month.

12. Around this same time, Jay Miller had a closed door, one-on-one conversation with me, in my office. He advised me that he was going to serve as FRELP's Partner for the New Jersey office and was responsible for getting the office in order. Jay Miller also told me that one of the reasons why he was stationing himself in the New Jersey office was to get involved with my business and to help me secure additional business.

13. After Jay Miller's announcement and conversation with me, I recall he was in FRELP's New Jersey office much more frequently than before, at least three times per week.

14. Never once did Jay Miller or any other FRELP Partner tell me or anyone else in the New Jersey office that Jay Miller's authority and responsibilities as a FRELP Partner were limited.

I DECLARE under penalty of perjury under the laws of the United States of America that the foregoing information contained herein is true and correct.

_____
DANIEL SPECTOR

Dated: November 26, 2012