**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FAMECO REAL ESTATE, L.P., <br><br> Plaintiff, <br><br> v. <br><br> TYLER BENNETT, DANIEL SPECTOR, WINICK REALTY GROUP LLC, and WINICK REALTY GROUP LLC NJ <br><br> Defendants. | Hon. Joel A. Pisano, U.S.D.J. <br> Hon. Tonianne J. Bongiovanni, U.S.M.J. <br><br><br> Civil Action No. 3:12-cv-06102 (JAP)(TJB) <br><br><br><br><br> **RETURN DATE: December 3, 2012** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF FAMECO REAL ESTATE, L.P.'S MOTION FOR EXPEDITED DISCOVERY**

> **GREENBAUM, ROWE, SMITH & DAVIS LLP**
> Metro Corporate Campus One
> P.O. Box 5600
> Woodbridge, NJ  07095-0988
> Tel:  (732) 549-5600
> Fax:  (732) 549-1881
> Attorneys for Fameco Real Estate,
> L.P.

Of Counsel and On the Brief:
    Eric Tunis

On the Brief:
    Robert J. Flanagan III

1440534.02

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ......................2

LEGAL ANALYSIS .................................................2

    FAMECO HAS SET FORTH AN ADEQUATE BASIS FOR THE
    COURT TO ORDER EXPEDITED DISCOVERY. ........................2

        A.    Fameco Has An Emergent Need for
               Discovery. ......................................2

             1.    Fameco Is Not Barred From Seeking
                    Emergent Discovery Because It Has
                    Not Moved For Immediate
                    Restraints. ...............................2

             2.    Fameco Has Demonstrated That Its
                    Need For This Discovery Is
                    Emergent. .................................5

        B.    Fameco Has Provided Sufficient Proof of
                Defendants' Continuing Breach of Their
                Broker-Salesperson Agreements. ..................7

        C.    The Motion to Dismiss Filed By Bennett
                and Spector Is Without Merit and Should
                Not Weigh In Their Favor. ......................11

        D.    Defendants' Claims That They Satisfied
                All Disclosure Requirements Under Their
                Respective Broker-Salesperson
                Agreements are Baseless. .......................12

CONCLUSION ...................................................14

1440534.02

**TABLE OF AUTHORITIES**

**Page**

**Cases**

Barbieri v. Wells Fargo Co.,
  2012 U.S. Dist. LEXIS 105969 (E.D.Pa. 2012) .................2

Better Packages, Inc. v. Zheng,
  2006 U.S. Dist. LEXIS 30119, No. 05-4477 (D.N.J. May
  16, 2006) ...............................................3, 4

Merrill Lynch, Pierce Fenner & Smith, Inc. v.
  O'Connor,
  194 F.R.D. 618 (N.D. Ill. 2000) ...........................4

Philadelphia Newspaper Corp. v. Gannett Satellite
  Information Network, Inc.,
  1998 U.S. Dist. LEXIS 10511, No. 98-CV-27821 (E.D.
  Pa. July 15, 1998). .......................................4

Semitool, Inc. v. Tokyo Electron America, Inc.,
  208 F.R.D. 273 (N.D. Cal. 2002) ...........................4

**Rules**

Fed. R. Civ. P. 26(d) .........................................2

## **PRELIMINARY STATEMENT**

Defendants Tyler Bennett ("Bennett") and Daniel Spector ("Spector") have failed to demonstrate that Fameco Real Estate L.P's ("Fameco") motion for emergent relief is unreasonable, particularly in light of indisputable evidence that they have been acting in blatant violation of their restrictive covenants from the time they were planning their departure from the company to this day.

Instead, defendants have attempted to contort Fameco's good-faith prelitigation efforts to resolve this matter into "evidence" that Fameco sat on its rights and, therefore, has no need for emergent relief.   However, Fameco had no reason to believe at the time of these negotiations that defendants were already planning to join co-defendant Winick Realty Group LLC ("Winick") and take Fameco clients regardless of whether an agreement was reached.   In addition, defendants transparently seek to impair Fameco's operations by refusing to disclose critical client information as long as possible despite their contractual obligation to do so, and the inevitability that they will have to do so in discovery, emergent or not.   Finally, defendants' motion to dismiss is frivolous and should not be an impediment to early discovery because Fameco has established complete diversity among the parties.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

Fameco relies upon the Procedural History and Statement of Facts set forth in its initial brief in support of its motion for expedited discovery and Michael Levin's Reply Declaration submitted herewith, and incorporate the same as if they were set forth herein.

## LEGAL ANALYSIS

### FAMECO HAS SET FORTH AN ADEQUATE BASIS FOR THE COURT TO ORDER EXPEDITED DISCOVERY.

A.    **Fameco Has An Emergent Need for Discovery.**

1.    **Fameco Is Not Barred From Seeking Emergent Discovery Because It Has Not Moved For Immediate Restraints.**

As an initial matter, the contention advanced by Bennett and Spector that a party must first move for a preliminary injunction in order to obtain expedited discovery should be summarily rejected.   Neither the Federal Rules of Civil Procedure nor the local court rules support defendants' position.  See Fed. R. Civ. P. 26(d).  Moreover, their reliance on the unpublished decision in Barbieri v. Wells Fargo Co., 2012 U.S. Dist. LEXIS 105969 (E.D.Pa. 2012) is misplaced because the Barbieri court denied the request for expedited discovery for a litany of reasons other than the mere failure to move for temporary or preliminary restraints.    Id. at  *11-*12. Specifically, the plaintiff in Barbieri failed to demonstrate how the discovery sought was relevant to the claims it raised,

-2-

offered only broad legal conclusions in support of the request, failed to limit the scope of the discovery sought, and failed to demonstrate that the need for discovery outweighed the hardships defendants would suffer answering it.  Ibid.

In contrast, Fameco was offered several specific reasons for seeking expedited discovery in its motion papers e.g., avoidance of injury to its Good Will, forfeiture of its right to collect commissions to which it is entitled, and default on its obligations to its lender.  Equally important, Fameco needs to determine whether defendants' continuing actionable conduct has caused sufficient injury to its business to warrant seeking emergent restraints that could potentially disrupt its relationships with clients who are also dealing with defendants. Finally, Bennett and Spector cannot claim surprise and will not suffer any hardship if ordered to answer Fameco's discovery requests, which are specifically tailored to Fameco's emergent needs, because  Fameco has been asking then and their counsel for the same for months.

Bennett and Spector also claim that this Court's decision in Better Packages, Inc. v. Zheng, 2006 U.S. Dist. LEXIS 30119, No. 05-4477 (D.N.J. May 16, 2006) "implicitley confirms" that preliminary restraints are a precondition to emergent discovery. This Court stated in Better Packages that when determining whether to allow expedited discovery, the court must consider

-3-

the "actual circumstances of each case", including among others, the fact that a preliminary injunction hearing is pending.  Id. at *8.  However, this Court never remotely suggested that a party must seek immediate restraints before seeking emergent discovery.

Rather, the court's decision in Better Packages primarily rested on the "need for the discovery and the breadth of the requests".  Ibid.  Specifically, this Court considered the stage of the proceeding in emergent discovery was requested, whether the discovery requests are narrowly tailored, the reason for early discovery, the burden the discovery would have on the non-moving party, and whether the non-moving party can respond to the discovery requests in an expedited manner.  Id. at *8-*10 (citing Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-78 (N.D. Cal. 2002); Merrill Lynch, Pierce Fenner & Smith, Inc. v. O'Connor, 194 F.R.D. 618, 624 (N.D. Ill. 2000); Philadelphia Newspaper Corp. v. Gannett Satellite Information Network, Inc., 1998 U.S. Dist. LEXIS 10511, No. 98-CV-27821 (E.D. Pa. July 15, 1998)).

In light of the foregoing, it is clear that the existence of a preliminary injunction is but one of many considerations that a court must look to in determining a request for expedited discovery and as Fameco set forth at length in its previously submitted memorandum of law and below, these considerations

-4-

weigh in favor of granting Fameco's request for expedited discovery.

### 2. Fameco Has Demonstrated That Its Need For This Discovery Is Emergent.

Bennett and Spector further assert that Fameco's pre-litigation efforts to negotiate a resolution of this matter after they announced their resignations demonstrate that there is no imminent need for the information Fameco seeks. This is simply not the case.

Specifically, defendants grossly mischaracterize Fameco's efforts as disorganized and dishonest when, in fact, it tried to reach an agreement that would ensure continuing service to its clients without any disruption caused by defendants' resignations. As a result, Fameco was willing to permit defendants to continue servicing certain clients on certain deals, otherwise prohibited by their restrictive covenants, in return for agreed upon compensation. Instead, defendants terminated negotiations and, actually expanded their contacts with Fameco clients. (Reply Declaration of Michael Levin ("Levin Reply Dec."), ¶6).

In August 2012, Spector engaged in negotiations with Jonathan Rome, Fameco's in-house counsel, and Michael Levin, Fameco's Chief Operating Officer. (Id. at ¶7). Indeed, Mr. Levin believed that the parties had come to a final agreement

-5-

and presented a written version to Spector for his review.  (Id. at ¶8).  For reasons unknown to Fameco, Spector simply ignored the proposal and abruptly ceased communications.  (Id. at ¶9).

As to Bennett, Fameco actually spent the first few weeks following his resignation attempting to convince him to stay. (Levin Reply Dec. at ¶10).  However, when it became apparent that Bennett did not want to remain at Fameco, they began discussing an amicable termination of the relationship.  (Ibid.) These negotiations proved still-borne because Bennett falsely insisted that he had disclosed all of the pending deals he was working on as of the date of his resignation, despite the fact that Fameco found many undisclosed potential deals in tracking reports stored on Bennett's company computer.  (Id. at ¶11).

When, Messrs. Rome and Levin failed to persuade Bennett to admit to his other deals, Brandon Famous, Fameco's Chief Executive Officer, volunteered to help in the negotiations. (Id. at ¶12).  Mr. Famous met with Bennett on August 20, 2012, but also was unable to convince Bennett to admit to the pending deals that Fameco knew he was working on prior to his resignation.  (Ibid.)

In late August 2012, Mr. Levin made one last attempt to negotiate with Bennett via telephone.  (Levin Reply Dec., ¶13). However, Bennett became combative in this conversation and it became apparent that further negotiations would be impossible.

-6-

(Ibid.)    It  was  at  this  time  that  Bennett  terminated  his
negotiations  with  Fameco.  (Id. at ¶14).

    Fameco  commenced  this  action  once  it  became  apparent  that
Bennett  and  Spector  had  no  intention  of  negotiating  in  good
faith,  and  instead  intended  to  steal  Fameco  clients  without
compensating  the  company..  (Id. at ¶17).   Thus,  Fameco  did  not
sit  on  its  rights  as  defendants  contend  and,  instead,  acted  to
enforce  its  rights  when  settlement  was  no  longer  feasible.

    As  will  be  set  forth  below  in  greater  detail,  Bennett  and
Spector  are  currently  in  breach  of  their  respective  Broker-
Salesperson  Agreements  with  Fameco;  and  exclusively  or
particularly  possess  information  that  may  mitigate  the  injuries
Fameco  was  sustained  and  will  sustain  as  a  result.   Standing
alone,  these  facts  warrant  emergent  discovery,  even  in  the
absence  of  a  preliminary  injunction.

**B.   Fameco  Has  Provided  Sufficient  Proof  of  Defendants'
    Continuing  Breach  of  Their  Broker-Salesperson
    Agreements.**

    Bennett  and  Spector  claim  that  Fameco  has  failed  to  provide
sufficient  proof  that  have  breached  their  restrictive  covenants
to  warrant  expedited  discovery.   Once  again,  they  base  this
claim  on  misstatements  of  fact  and  incorrect  interpretations  of
their  Broker-Salesperson  Agreements  with  Fameco.   However,
Fameco  previously  supplied  this  Court  with  sufficient  evidence
of  their  many  contractual  breaches  and  provides  herein,

-7-

additional recently discovered proof of their continuing actionable conduct.

Michael Levin's initial declaration provides sufficient support for Fameco's request for expedited discovery.[1] Although Spector attempts to dismiss the relevance of the e-mails attached to the original declaration as "innocuous", they clearly provide evidence that he was planning to steal Fameco clients while he was still with the company. In particular, Spector claims that Exhibit B represents a simple referral, stating that Chipotle needed assistance in Long Island, and since Fameco does not conduct business there he referred the matter to Winick. However, Spector made this "referral" weeks prior to his resignation from Fameco and his start date at Winick and Fameco is unaware of any other instance in which Spector referred New York business to Winick. (Levin Reply Dec., ¶36). Thus, the e-mail is clear proof that Spector was sending clients to Winick in anticipation with his immenent affiliation with the company. In doing so, he diverted Fameco opportunity to refer business to his own advantage while he was still under contract with Fameco. Thus, it is no surprise that

---

[1] It must be stated at the outset that Fameco has never accessed the personal e-mail accounts of Bennett and Spector. (Levin Reply Dec., ¶20). In fact, any and all e-mails attached to Mr. Levin's previously submitted Declaration were discovered due to the fact that they were either sent to or received by a Fameco e-mail address. (Ibid.)

according to Spector's on-line profile with Winick, he still represents Chipotle in Long Island, as well as in central New Jersey, <u>a location covered by his restrictive covenant</u>.

Exhibits C and D to Mr. Levine's initial declaration also demonstrate that Spector actually began to breach his Broker-Salesperson Agreement even before resigning from Fameco. Exhibit C, only recently discovered, is an e-mail sent by Spector from his Fameco account to his personal account a few days prior to his resignation.  This e-mail includes a list of guests Fameco intended on inviting to a party.  Spector blithely claims that he forwarded the list home so that he could have an easier time reading it, but fails to mention that the list includes 500 of Fameco's most important client contacts.[2]  (Levin Reply Dec., ¶37).  His explanation is simply unworthy of belief. The more credible explanation is that he transferred the highly proprietary list of contacts to his personal e-mail account because he knew he would be using it to solicit business from Fameco clients when he joined Winick shortly thereafter.

Exhibit D is a series of e-mails in which Spector is acting on behalf of another company, S&D Development.  Spector states

---

[2] Spector also states that it is unclear if an attachment was even a part of the e-mail.  There was an attachment, however, given the proprietary nature of its contents, Fameco chose not to include it in its submission to the court.  (Levin Reply Dec., ¶37).  However, it is available for the Court's inspection upon request.

that Exhibit D reflects communications pertaining to a family-owned real estate company, which he was permitted under his Broker-Salesperson Agreement with Fameco.  What Spector fails to mention is that under his agreement he was required to present any real estate development opportunity related to his family business to Fameco, when then had the option to participate or not.  (See Declaration of Daniel Spector, Exhibit A, pg 3, ¶13).  Instead, Spector presented the potential deal to another company without having brought it to Fameco's attention first.  (Levin Reply Dec., ¶35).

Bennett and Spector also do not, and cannot, dispute the fact that they are currently breaching their restrictive covenants.  Indeed, their on-line profiles at Winick provide indisputable proof that they have been breaching their Broker-Salesperson Agreements on an on-going basis.  Specifically, these profiles explicitly state that they are currently serving Fameco clients in blatant violation of their Broker-Salesperson Agreements.  (See Declaration of Michael Levin previously submitted, Exhibit E).  In addition, it has recently come to Fameco's attention that Bennett is still actively representing Pep Boys, a "Covered Client," within the geographic region prohibited by his Broker-Salesperson Agreement.  (Levin Reply Dec., Exhibit A).

-10-

The fact that Bennett and Spector continue to breach their Broker-Salesperson Agreements standing alone justifies expedited discovery. Fameco cannot properly assess the extent of defendants' actionable conduct, mitigate the harm it already has suffered, and prevent future injury without additional information that is primarily or particularly in the possession of defendants.

Therefore, this Court should grant Fameco's request for expedited discovery.

**C.    The Motion to Dismiss Filed By Bennett and Spector Is Without Merit and Should Not Weigh In Their Favor.**

This Court should not consider defendants' motion to dismiss in connection with Fameco's motion for emergent discovery. Unsurprisingly, Bennett and Spector do not provide any discussion as to the substance of their motion because it is completely without merit. As demonstrated by the brief Fameco filed in opposition to that motion (ECF No. 9), Fameco has established complete diversity among the parties, and therefore, this Court has subject matter jurisdiction over this case. Accordingly, their meritless application should not enter into this Court's consideration of the instant motion.

-11-

**D.    Defendants' Claims That They Satisfied All Disclosure Requirements Under Their Respective Broker-Salesperson Agreements are Baseless.**

Both Bennett and Spector claim that they complied with their respective Broker-Salesperson Agreements in their-post termination disclosures to Fameco.   They claim that their Broker-Salesperson Agreement with Fameco only requires that they include the transactions to which they believe they are entitled to "Earned" commissions, and thus they have done nothing wrong by not disclosing more.   Bennett and Spector ignore that their Broker-Salesperson Agreements explicitly state that if Bennett and Spector provide such a limited disclosure, they must forfeit any interest they have in any other transaction in which they previously participated on behalf of Fameco.

In addition to the "Earned" commission transactions, the Broker-Salesperson agreement explicitly states that as of the termination of his or her relationship with Fameco, the salesperson forfeits any interest he or she had in a listed sale or lease that would have otherwise been payable at the time of sale or lease. (See Declaration of Tyler Bennett, Exhibit C, pg 10; Declaration of Daniel Spector, Exhibit A, pg 10).   When negotiations first began with Bennett and Spector, Fameco requested information regarding these transaction for which they had not "Earned" a commission, so that Fameco could determine the status of the transactions, and negotiate a percentage of

-12-

the commission to which Bennett and Spector could receive. (Levin Reply Dec., ¶30). However, Bennett and Spector refused to provide such information, and instead continued to work for these Fameco clients without authorization and in an attempt to divert business away from Fameco. (Id. at ¶31).

Therefore, while Bennett and Spector did not have to disclose any further information under their Broker-Salesperson Agreements; however, they then had to cease working for those clients and renounce any claim to further commissions. As forth supra, it is clear that Bennett and Spector have not ceased working for these clients, and therefore, are harming Fameco on an ongoing basis due to their blatant breaches of their Broker-Salesperson Agreements.

-13-

## **CONCLUSION**

For all of the foregoing reasons, Fameco respectfully requests that its motion for expedited discovery be granted.

Respectfully submitted,

**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Attorneys for Plaintiff
Fameco Real Estate, L.P.


_____/s/ Eric Tunis_____
ERIC TUNIS

Dated:  November 26, 2012

-14-