**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FAMECO REAL ESTATE, L.P., | |
| Plaintiff, | Civil Action No. 12-06102 (JAP) |
| v. | **OPINION** |
| TYLER BENNETT AND DANIEL SPECTOR, et al.. | |
| Defendants. | |

PISANO, District Judge.

This is an action brought by Plaintiff Fameco Real Estate, L.P. ("Plaintiff" or "Fameco") against Defendants Tyler Bennett ("Bennett"), Daniel Spector ("Spector"), Winick Realty Group NJ, LLC and Winick Realty Group LLC (collectively, "Defendants"). Plaintiff's Complaint alleges that Defendants are liable for breach of contract, breach of duty of loyalty, breach of the duty of good faith and fair dealing, interference with contract, interference with prospective economic advantage, conspiracy and aiding and abetting, and misappropriation of trade secrets. Plaintiff also alleges a claim for injunctive relief. Presently before the Court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction (dkt. entry no. 7).[1] Plaintiff opposes the motion. The Court decides these matters without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court finds that there is complete diversity of citizenship between the parties

---

[1] Defendants Winick Realty Group NJ, LLC (named in the Complaint as Winick Realty Group LLC NJ) and Winick Realty Group LLC join in the Motion to Dismiss, which was filed by Bennett and Spector (dkt. entry no. 25).

and the amount in controversy requirement is met, thereby vesting this Court with subject matter jurisdiction.  Accordingly, Defendants' Motion to Dismiss shall be denied.

**I.     Background**

    **A. Plaintiff's Complaint**

The following allegations are summarized from the Complaint, and must be taken as true in deciding this Motion to Dismiss.  Fameco is a real estate brokerage firm specializing in retailer representation, landlord leasing, property management and investment sales.  In October 2008, Spector entered into a Broker-Salesperson contract with Fameco and in April 2010, Bennett entered into a Broker-Salesperson contract with Fameco (collectively, the "Broker Agreements").  The Broker Agreements set forth the terms by which Spector and Bennett would serve as independent contractors and salespersons for Fameco.

Among other things, the Broker Agreements obligated Spector and Bennett to devote their best efforts to further the interests of Fameco and to use any information gained from this affiliation to benefit Fameco.  The Broker Agreements also prohibited Spector and Bennett from distributing information about Fameco's business to third parties without Fameco's written consent and from using such information in any way, should their affiliations with Fameco terminate.  Finally, the Broker Agreements each provided that, in the event Spector or Bennett's respective affiliation with Fameco was terminated, such Defendant agreed that he would not provide brokerage services to any of Fameco's clients for a period of one year following termination.  If Spector or Bennett failed to comply with these terms, he would forfeit his right to any future commissions or payments owed to him by Fameco.  Throughout their respective affiliations with Fameco, Spector and Bennett provided brokerage services to various Fameco clients, in accordance with the terms of the Broker Agreements.

On June 27, 2012, Spector resigned from his position at Fameco. Several weeks later, on July 17, 2012, Bennett also resigned from his position at Fameco. After Spector and Bennett terminated their relationships with Fameco, they both became affiliated with Defendant Winick Realty Group LLC ("Winick"), another real estate brokerage firm. Plaintiff alleges that Winick hired Spector and Bennett in an effort to open an office in New Jersey that will provide retail leasing and advisory real estate services. Since becoming affiliated with Winick, Spector and Bennett have allegedly provided brokerage services to Fameco's clients, in violation of the terms of the Broker Agreements.

In August 2012, Fameco sent Bennett a letter, demanding that he cease and desist from violating his agreement with Fameco and notifying Bennett that it intended to file suit if Bennett did not confirm in writing that he had ceased working with Fameco's clients. Bennett did not respond to Fameco's letter. Similarly, in September 2012, Fameco sent Spector a letter, demanding that he cease and desist from violating his agreement with Fameco and notifying Spector of its intent to file suit if Spector did not confirm in writing that he had ceased working with Fameco's clients. Spector did not respond to Fameco's letter. Fameco also sent a letter to Winick in September 2012, in which it stated that it was aware of Bennett and Spector's affiliation with Winick and intended to file suit if Defendants did not cease working with Fameo's clients. Winick did not respond to this letter. On September 27, 2012, Fameco commenced this action.

### B. Defendants' Motion to Dismiss

Defendants move to dismiss Plaintiff's Complaint, arguing that one of Fameco's partners is a citizen of New Jersey and thus, there is not complete diversity of citizenship between the parties since Defendants are also New Jersey citizens. Specifically, Defendants assert that

Plaintiff's Complaint fails to identify an individual named Jay Miller ("Miller") as a partner of Fameco, but that the firm's public materials make clear that Miller is a partner of the firm. Defendants claim that Miller became a partner in 2009 and since that time, Fameco has held Miller out as a partner to customers, firm employees and salespersons, including Defendants. Defendants further argue that, even if Miller is not an equity partner, they were never made aware of Miller's non-equity status or his purported inability to enter into agreements on the firm's behalf. Instead, they claim that they were led to believe that Miller was a full partner of the firm, with all the right and obligations associated with partnership. Accordingly, they contend that Fameco should be estopped from now denying Miller's status as partner. And because Mercer County tax records demonstrate that Miller is a citizen of New Jersey, Defendants argue that there is not complete diversity and the Court lacks jurisdiction.

Plaintiff does not dispute that Miller is a citizen of New Jersey, but instead asserts that Miller's citizenship is irrelevant for purposes of determining Fameco's citizenship because Miller is not in fact a partner of the firm. Plaintiff asserts that in 2009, Miller entered into an agreement with Fameco, which set forth the parameters of their relationship (the "Non-Equity Agreement"). The Non-Equity Agreement states that: Miller has a contractual relationship with Fameco that is outside the purview of the firm's partnership agreement; he is not a signatory to Fameco's partnership agreement; he has not contributed any capital to the firm; he has no voting rights or ownership rights in the partnership; he has no responsibility for Fameco's liabilities; and he is not entitled to a share of the firm's profits. In addition, Fameco claims that Miller has been issued a Form 1099 annually, as opposed to equity partners, who receive Form K-1s.[2]

---

[2] Both parties have submitted fact affidavits and exhibits in support of their contentions. Plaintiff also filed a sur-reply requesting that the Court strike a portion of Defendants' reply brief and supporting declarations because these submissions allegedly raised new arguments that were not advanced in the initial papers or Plaintiff's opposition. As an initial matter, the Court notes that

Finally, Plaintiff asserts that Miller is also bound by another agreement with the firm, which bars him from executing documents on Fameco's behalf or otherwise obligating the firm in any way. The Court addresses these arguments below.

## II.     Standard of Review

Federal courts are courts of limited jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As a result, they only have jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States. *See* 28 U.S.C. § 1331.  When a claim does not arise out of a federal question, federal courts have jurisdiction only in cases where there is complete diversity of citizenship between the parties involved and the amount in controversy requirement is met.  28 U.S.C. § 1332.  The current general-diversity statute grants federal district courts jurisdiction over suits for more than $75,000 "between . . . citizens of different States." [3]  28 U.S.C. § 1332(a).  For diversity jurisdiction to attach, "all parties on one side of a litigation must be of a different citizenship from all of those of the other."  *Carlsberg Resources Corp. v. Cambria Savings and Loan Assoc.*, 554 F.2d 1254, 1258 (3d Cir. 1977).  The party claiming jurisdiction bears the burden of demonstrating complete diversity.  *See Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222 n. 13 (3d Cir. 1999).

In evaluating a Rule 12(b)(1) motion to dismiss, the Court must determine whether the motion attacks the Complaint as deficient on its face, or whether the motion attacks the existence of subject matter jurisdiction in fact.  *See Turicentro, S.A. v. Am. Airlines, Inc.*, 303 F.3d 293,

---

Plaintiff did not request the Court's permission to file this sur-reply, as required by Local Rule 7.1(d)(6), and therefore the sur-reply is improper.  In any event, the Court finds that Defendants' reply brief and supporting declarations should be considered because Defendants bear the burden of proof in establishing there is a partnership and are entitled to present evidence in support of this proposition.  *See Leprino Foods Co. v. Gress Poultry, Inc.*, 379 F. Supp. 2d 650, 655 (M.D. Pa. 2005).  Thus, the Court declines to strike Defendants' reply brief.

[3] The parties in this case do not dispute that the amount in controversy exceeds $75,000. Therefore, the Court will not address that issue in this Opinion.

300 & n.4 (3d Cir. 2002). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). The Court has substantial procedural flexibility in handling Rule 12(b)(1) motions, but "the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention." *Berari v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 2000). Defendants in this case make a factual attack on subject matter jurisdiction. Accordingly, the Court will consider all of the evidence submitted by both parties in deciding this Motion to Dismiss.

### III. Legal Discussion

#### A. Citizenship of the Partnership

Defendants allege lack of subject matter jurisdiction due to a lack of diversity between the parties. The Supreme Court has established that for artificial entities other than corporations, citizenship "depends on the citizenship of all the members, the several persons composing such association, each of its members." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (internal quotations omitted). "When the rule of complete diversity is applied in conjunction with the principle that the citizenship of a partnership depends upon that of its members, it becomes clear that diversity jurisdiction may not obtain . . . unless *all* of the members of the plaintiff partnership are of distinct citizenship from all of the defendants." *Carlsberg*, 554 F. 2d at 1259. A limited partnership is a citizen of every state of which any partner, general or

limited, is a citizen. *Id.* at 1260-62. There are no exceptions to this rule. Thus, if Miller is a partner of Fameco, Fameco is a citizen of any state of which Miller is a citizen.

There are cases, however, in which a partnership may describe a person as one of its "partners," although that person is not actually a partner of the partnership under state law. For example, in the case on which Plaintiff primarily relies, *Morson v. Kriendler & Kriendler LLP*, 616 F. Supp. 2d 171 (D. Mass. 2009), a New York law firm described one of its attorneys as a partner, even though, under New York law, that attorney was really only an employee. In such cases, the citizenship of the purported "partner" can be disregarded. *See id.*; *see also Garcia v. Farmers Ins. Exchange*, 121 F. Supp. 2d 667, 669-670 (N.D. Il. 2000) (finding that the citizenship of insurance company's members or policyholders was irrelevant for purposes of determining the company's citizenship, since such policyholders had a contractual relationship with the company but were not members of the company under state law). Thus, the Court must determine whether Miller is in fact a partner of Fameco under state law.[4]

Under Pennsylvania law, a "partnership is an association of two or more persons to carry on as co-owners a business for profit." 15 Pa. Cons. Stat. Ann. § 8311(1). To determine if a partnership exists, there must be "clear, mutual assent on the part of two or more persons" to form a partnership. *In re Jackson*, 28 B.R. 559, 562-63 (Bankr. E.D. Pa. 1983). A partnership may be in writing, or it may be implied from all attending facts and circumstances, *i.e.,* the manner in which the purported partners conducted their business. *See Leprino Foods Co. v. Gress Poultry, Inc.*, 379 F. Supp. 2d 650, 655 (M.D. Pa. 2005). The sharing of gross returns does not alone establish a partnership, *see* 15 Pa. Cons. Stat. Ann. § 8312, but a pattern of profit and loss sharing or a partnership tax return may support a finding of a partnership. *Leprino*, 379

---

[4] Fameco is a Pennsylvania limited partnership. Accordingly, the Court must look to Pennsylvania law to determine whether Mr. Miller is a partner.

F. Supp. 2d at 655. The burden of proof lies with the party seeking to establish there is a partnership. *Id.*

Here, Defendants contend that the designation of Miller as a "partner," coupled with Plaintiff's apparent practice of holding out Miller as partner is sufficient to establish that Miller is a partner of the firm. The Court disagrees. Defendants have not presented any evidence that Fameco or Miller intended to enter into a partnership with one another, except for the designation of Miller as a "partner" on the firm's website and public materials. Nor is there any evidence of profit and loss sharing between Miller and Plaintiff from which an intent to form a partnership may be inferred. Indeed, Miller's contract with Fameco specifically denies any such profit sharing and makes clear that Miller is not a co-owner of the firm and is not a signatory to the partnership agreement.[5] *See Morson*, 616 F. Supp. 2d at 172-73 (contract partner who was paid a fixed salary, did not make a capital contribution or share in the firm's profits and did not have any liability for the firm's debts was merely an employee whose "citizenship is irrelevant for purposes of a diversity analysis"). Additionally, Miller has not filed a partnership tax return or received a Form K-1 from Plaintiff during the period in which he has been affiliated with it. Miller "do[es] not become a member of a business association merely by entering into a contractual relationship with it." *Garcia*, 121 F. Supp. 2d at 669. Thus, the Court finds that Miller is not a partner of Fameco.

---

[5] The fact that Miller may be entitled to a bonus if he hits certain commission targets and the firm is profitable in a given year does not transform his contractual relationship with Fameco into a partnership. The Non-Equity Agreement specifically provides that Miller's annual bonus is to be calculated as a percentage of his gross commissions, *not* of Fameco's profits. In other words, Miller's potential bonus is more akin to a bonus on a fixed salary than to a share of profits.

### B. Partnership by Estoppel

Alternatively, Defendants argue that even if Miller is not technically a partner under state law, he is nonetheless a partner under a theory of "partnership by estoppel". The Court is not persuaded.[6] Under Pennsylvania law, the elements of partnership by estoppel are: (1) a representation to a third party that one is a partner; (2) reliance upon that representation by the third party to whom it was made; and (3) the extension of credit by such party on reliance upon the representation. *Leprino*, 379 F. Supp. 2d at 656 (citing *Import Prods. Co., Inc. v. Group RL Inc.*, 1998 WL 1093454, at *4 (Pa. Com. Pl. 1998)). "Estoppel is based upon the principle that if a man holds himself out, either actively or passively, or permits himself to be held out as a member of a partnership, and so induces third parties to deal with the firm and extend credit upon the belief that the party estopped was a member thereof, and upon credit of this party, when otherwise they would not have so dealt, he should not then be allowed to deny his apparent connection with the partnership, and so escape liability." *Id.* (citations omitted).

Here, Bennett and Spector contend that they were misled by Miller's and Fameco's representations that Miller was a partner and that they relied on these representations in their professional interactions with Miller and the other partners at Fameco. They assert that they "took directions" from Miller and "accepted as true" information that Miller relayed to them about Fameco's management and operations. They state that they did not distinguish Miller from the other partners in any way and "tended to their duties and responsibilities" as salespersons based on their belief that Miller was a partner. Bennett and Spector further allege that Miller made certain promises on behalf of Plaintiff, including a representation that Fameco intended to make Spector a partner in Fameco's New Jersey office.

---

[6] The Court notes that it is unclear whether its jurisdiction could be divested by an estoppel theory. However, even if it could, Defendants fail to establish a partnership by estoppel here.

However, even accepting all of Defendants' assertions as true, the record is completely devoid of any evidence that Bennett or Spector ever extended credit to Fameco or Miller based on these representations, a crucial element of establishing partnership by estoppel under Pennsylvania law.[7] Defendants have also failed to show that Spector and Bennett relied upon representations that Miller was a partner when they entered into the Broker Agreements with Fameco. Indeed, Spector signed his agreement with Fameco in 2008, a year *before* Miller purportedly became a partner of the firm and there is no evidence that Spector continued his relationship with Fameco after 2009 based on his belief that Miller was a partner. *See Morson*, 616 F. Supp. 2d at 173 (finding that plaintiff could not establish element of reliance where the events at issue took place years prior to the misrepresentations regarding the contract partner's status). Nor is there any evidence that Bennett agreed to enter into a contract with Fameco in 2010 based on his understanding that Miller was a partner.

Simply put, while Bennett and Spector argue that the firm's designation of Miller as a "partner" is sufficient evidence of a partnership, they have failed to show how they relied upon this representation to their detriment. The mere fact that they interacted with Miller as if he were a partner and believed that he had the authority to bind Plaintiff is insufficient to establish reliance. "[T]he doctrine of estoppel is not sufficient to create a partnership as between the alleged partners, or as to third persons *who have not in fact been misled*."). *Leprino*, 379 F. Supp. 2d at 658 (quoting *In re Ganaposki*, 27 F. Supp. 41, 42 (M.D. Pa. 1939), emphasis added). Absent evidence of reliance, Defendants cannot establish a partnership by estoppel.

---

[7] By contrast, the standard for partnership by estoppel under Massachusetts law only requires a showing of prejudice, not the actual extension of credit. *See Morson*, 616 F. Supp. 2d at 173. Either way, Defendants cannot demonstrate the element of reliance.

### C. Jurisdictional Discovery

Finally, Defendants request that they be permitted to take limited discovery on the issue of Miller's "status as a member of [Fameco] and the application of the doctrine of partnership by estoppel." Specifically, they seek to uncover additional information about the identity and citizenship of Miller and whether he is a partner of Fameco, either as a matter of fact or under an estoppel theory. As noted above, it is unclear whether the Court's jurisdiction can be divested by an estoppel. Even if it could, however, the Court finds that discovery at this stage is unwarranted, since Plaintiff has established that Miller is not in fact a partner of the firm and Defendants cannot demonstrate that they detrimentally relied on Miller's alleged status as a partner for purposes of establishing a partnership by estoppel.[8] Accordingly, Defendants' request for jurisdictional discovery is denied.

### IV. Conclusion

For the foregoing reasons, the Court finds that it has subject matter jurisdiction over this case. Therefore, Defendant's Motion to Dismiss will be denied. An appropriate Order follows.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: May 7, 2013

---

[8] We recognize that jurisdictional discovery may be appropriate in some cases. "In the Third Circuit, jurisdictional discovery is available to assist a plaintiff in establishing the contacts necessary for the exercise of personal jurisdiction." *Everything Yogurt Brands, LLC v. M.A.R. Air Foods, Inc.*, 2009 U.S. Dist. LEXIS 94601, at *3 (D.N.J. 2009). Here, however, Defendants seek jurisdictional discovery related to subject matter – not personal – jurisdiction. "The Third Circuit has not directly addressed, however, the question of whether jurisdictional discovery is available to assist in resolving uncertainties about diversity jurisdiction." *Id.* Moreover, the Court is unaware of any case in this circuit where jurisdictional discovery is permitted to defeat, rather than establish, jurisdiction. Nor does such discovery make sense where, as here, Plaintiff has established this Court's jurisdiction.